**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Wayne Harder,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-20-01365-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal of the denial of his application for social security disability benefits. Plaintiff alleges that he has been disabled since January 15, 2016. (Doc. 15-3 at 14).

Plaintiff claims on appeal that the Administrative Law Judge ("ALJ") who conducted his hearing erred in two respects: 1) the ALJ failed to give adequate reasons for not fully crediting Plaintiff's symptom testimony (Doc. 18 at 12); and 2) the ALJ "provided insufficient rationale to justify relying on the state agency reviewers' opinions to find [Plaintiff] not disabled" (Doc. 18 at 21).

**I.　Five-Step Evaluation Process**

　　**A.　Governing Law**

To qualify for social security disability benefits, a claimant must show that the claimant "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if the claimant suffers from a medically determinable physical or mental impairment that prevents the claimant from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–

(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [the claimant's] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform the claimant's "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's

RFC, age, education, and work experience—the claimant "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

**B.     ALJ's Findings Following Plaintiff's Hearing**

At step one, the ALJ determined that Plaintiff had not done any gainful work since his March 2, 2017 application date. (Doc. 15-3 at 16).

At step two, the ALJ determined that Plaintiff has the following severe impairments: lumbar spondylosis, myofascial pain syndrome, obesity, major depressive disorder, posttraumatic stress disorder (PTSD), and schizophrenia. (Doc. 15-3 at 16). The ALJ determined that Plaintiff's other diagnosed and alleged conditions were only minimally corroborated by clinical evidence and did not individually or in combination significantly impact Plaintiff's ability to perform basic work-related activities. (Doc. 15-3).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Doc. 15-3 at 17).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Doc. 15-3 at 21).

At step five, after determining Plaintiff's residual functional capacity and considering the testimony of the vocational expert, the ALJ determined Plaintiff could perform other jobs that exist in the national economy. (Doc. 15-3 at 22 (listing several jobs)).

**II.     Legal Standard on Appeal**

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). On review, the

Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. Discussion

### A. Plaintiff's Symptom Testimony

Plaintiff's first claim of error on appeal is that the ALJ committed harmful error by rejecting Plaintiff's symptom testimony without giving specific, clear and convincing reasons supported by substantial evidence in the record as a whole for rejecting such testimony. (Doc. 18 at 12).

#### 1. Law Regarding Plaintiff's Symptom Testimony

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In assessing the credibility of a claimant's statements regarding subjective pain or the intensity of symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'"

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

### 2. Analysis

Overall, Plaintiff argues on appeal that the ALJ failed to provide sufficient specificity in his findings to not fully credit Plaintiff's symptom testimony. (Doc. 18 at 14). The Court will address each of Plaintiff's claimed defects in the ALJ's opinion in turn.

#### a. Nexus Between Plaintiff's Symptoms and ALJ's Findings

First, the ALJ found that Plaintiff's symptom testimony was not entirely consistent with either the medical evidence of record or the other evidence of record. (Doc. 15-3 at 19). Plaintiff argues this finding is not tied to a specific symptom of Plaintiff's that the ALJ is rejecting and therefore is too general to be specific reason to reject Plaintiff's symptom testimony. (Doc. 18 at 13-14). However, the ALJ provided multiple specific reasons for finding that Plaintiff's testimony was not consistent with the medical evidence or other evidence of record.

Turning first to the ALJ's finding that Plaintiff's symptom testimony was not consistent Plaintiff's testimony about his daily activities and his other abilities, the ALJ found:

> The claimant alleged that he has difficulty remembering generally, understanding what is said to him, following instructions, completing tasks, and taking medications without reminders. However, the claimant also stated he could perform simple maintenance and prepare meals. (Exhibit 3E). In addition the record shows that the claimant was able to provide information about his health, describe [his] prior work history, respond to questions from medical providers, and there is [not] any mention of any issues with the claimant's short- or long-term memory. (E.g. Exhibits 1F, 3F, 4F, 13F, and 20F).

(Doc. 15-3 at 17). This paragraph is an example of the ALJ pointing to specific record evidence of where Plaintiff's claimed symptoms were inconsistent with other record evidence. As follows, the ALJ made numerous other specific findings tying why the ALJ rejected Plaintiff's symptom testimony because it was inconsistent with other record evidence.

By way of further example, the ALJ found:

> Here, the claimant alleged that [he] has difficulty getting along with others and dealing appropriately with authority. However, according to his statements, the claimant also has the ability to live with others. (Exhibit 3E). The claimant reported auditory and visual hallucinations. However, [in] many records, [including] most recent records [he] denies any hallucinations. (Exhibits 2F, p. 21; 5F, p. 11; 13F, p. 16; and 16F, p. 8). Finally, the medical evidence shows that the claimant was described as pleasant and cooperative. (E.g., Exhibits 2F, p. 19; 7F, p. 8; 10F, p. 43; and 18F, p. 2).

(Doc. 15-3 at 17). This is another example of the ALJ pointing to and citing specific record evidence that was inconsistent with Plaintiff's symptom testimony.

By way of further example, the ALJ found:

> The claimant has contented that he has limitations in concentrating generally, following instructions, and completing tasks. On the other hand, claimant said that he is also able to prepare meals. (Exhibit 3F). Additionally, the record fails to show any mention of distractibility.

(Doc. 15-3 at 17-18). Again, these findings are another example of the ALJ pointing to and citing specific record evidence that was inconsistent with Plaintiff's symptom testimony.

By way of further example, the ALJ found:

> The claimant asserted that he has difficulties handling change, dressing, bathing, and managing his mood. That said, the claimant also stated that he is able to care for children with some assistance. (Exhibit 3E). Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene. (E.g. Exhibits 2F, p. 19.; 5F, p. 28; 10F, p. 30; and 15F, p. 5). … Here, the claimant has been observed to be able to manage[] himself in [an] appropriate manner.

(Doc. 15-3 at 18). Again, these findings are a further example of the ALJ specifically indicating where the Plaintiff's testimony and the other record evidence were inconsistent. Plaintiff's argument on appeal that the ALJ failed to make such findings belied by the plain language of the decision in this case.

Next, the ALJ also found that Plaintiff's symptom testimony regarding the severity of his symptoms was inconsistent with the medical record. Plaintiff presented the severity of his symptoms to the ALJ in a function report in which Plaintiff claimed that he had "difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others." (Doc. 15-3 at 19 (citing Doc. 15-7 at 14-22).).

Addressing first Plaintiff's claimed physical limitations, the ALJ found that the severity of the symptoms reported by Plaintiff were inconsistent with the medical record because:

> X-ray of the claimant's lumbar spine from November 16, 2015, showed **no** fracture, **normal** alignment, marginal osteophytes with **mild** disc space narrowing the T12-L1 levels. However, physical examinations showed that his cervical and lumbar spine had **normal** appearance, **normal** strength and stability, and **normal** range of motion. … MRI[] shows age appropriate and generally **unremarkable**. Treatment notes… after an attempted hanging note trauma to the neck with pain, but **no** acute cardiopulmonary disease, **no** evidence of fract[ure] or spondylolisthesis, and objective imagining was otherwise **unremarkable**. (Exhibit 2F). …. Physical examinations … noted that his cervical and lumbar appearance was **normal**, range of motion of neck and upper limbs were **normal**, that he ambulates **normally** without an assistive device, range of motion of lower back and lower limbs were **normal**, but that he had some lumbar paraspinal tenderness. (Exhibit 2F). Treatment [notes] on April 15, 2019, for follow up to trigger point injections, the claimant reported 80% relief from lumbar medical branch block. Again, physical examinations noted generally **normal** finding in sensation, strength, and range of motion. (Exhibit 14F).

(Doc. 15-3 at 19 (emphasis added)). The ALJ then specified that he was incorporating

these objective findings into his determination of Plaintiff's residual functional capacity. (Doc. 15-3 at 20). As the above block quote reveals, the ALJ noted 15 specific separate instances whether the medical record was inconsistent with the severity of Plaintiff's claimed limitations. Thus, Plaintiff's claim of error on appeal that the ALJ did not specify where his medical record was "normal" such that it was inconsistent with Plaintiff's claimed severe limitations is again belied by the ALJ's opinion itself.

Next addressing Plaintiff's claimed psychological symptoms, the ALJ found that the severity of the symptoms reported by Plaintiff were inconsistent with the medical record. Specifically, after noting that Plaintiff had a history of depressive disorder, PTSD, and mixed personality traits, the ALJ found that:

> Evaluations … noted that the claimants mood was much improved, [and that the claimant] has motivation, normal concentration and attention span, positive outlook toward life, support from others, improved mood, good eye contact, cooperative, linear thought process, denies suicidal and homicidal ideations, denies hallucinations or paranoia, fair insight and judgment, intact memory, and fair concentration and attention []. (Exhibit 4F). … [C]laimant attempted suicide…. The claimant was diagnosed with PTSD, persistent depressive disorder, dysthymia disorder, [and] marijuana use. However, therapy notes, indicated that the claimant denied endorsing suicide, citing great improvement as a result of the medication. Conversely, [later] therapy notes … noted that that the claimant's medications [were] not working. (Exhibit 5F). [Later] examinations noted that the claimant was dressed appropriately, and had fair hygiene, good eye contact, appropriate mood and affect, intact memory, and normal attention and concentration. (Exhibits 7F and 9F). … Notes [also] indicated several no shows to appointments and a need for medication, but the claimant did not reschedule. (Exhibits 8F and 9F). [Later] the claimant was voluntarily admitted with thoughts of suicidal ideations. Mental states examinations at this time were generally normal. (Exhibit 13F). [Later] progress notes indicated that the claimant had good progress with no significant changes in mood or behavior. Again, mental status examinations were normal. (Exhibit 16F). This evidence … [shows] the claimant can follow simple instructions for unskilled work with occasional contact with coworkers or public.

(Doc. 15-3 at 20).

This detailed recounting of Plaintiff's history shows that while Plaintiff suffered certain psychological symptoms, his reports to his doctors and his doctors observations were inconsistent with Plaintiff's symptoms as reported to the ALJ in Plaintiff's function report: namely, that Plaintiff claimed he had difficulty remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. *See*

1  (Doc. 15-3 at 19 (citing Doc. 15-7 at 14-22).).

Accordingly, this Court rejects Plaintiff's claim of error on appeal based on Plaintiff's argument that the ALJ's conclusions were not adequately supported by specifically tying Plaintiff's symptom testimony to the contradictory evidence of record. The decision of the ALJ to reject the severity of Plaintiff's symptom testimony is affirmed because the ALJ gave clear and convincing reasons, supported by substantial evidence of record, to not fully credit such testimony.

### b. Appellate Review

Similarly, this Court rejects Plaintiff's argument on appeal that the ALJ's decision did not contain sufficient specificity to allow appellate review. *See* (Doc. 18 at 14-15). The decision as a whole, and the specific portions of the decision quoted herein, adequately explain the ALJ's reasoning and conclusions such that this Court can review the basis for those conclusions.

### c. Consideration of Medical Evidence

Plaintiff also argues that the ALJ committed legal error by finding that the severity of Plaintiff's self-reported symptoms was not consistent with the medical evidence of record. (Doc. 18 at 14). Plaintiff argues that Plaintiff only needs to produce evidence of a medically determinable impairment that could reasonably be expected to cause his symptoms, and that the ALJ cannot require him to produce evidence of the severity of his symptoms. (*Id.*). While Plaintiff is correct that he is not required to produce evidence of the severity of his symptoms, *see Garrison*, 759 F.3d at 1014, Plaintiff mischaracterizes the ALJ's consideration of the evidence.

The ALJ never stated that the ALJ rejected Plaintiff's symptoms because Plaintiff failed to produce evidence of the severity of his symptoms. Instead, the ALJ failed to give full credit to Plaintiff's self-reported symptoms because those self-reported symptoms were inconsistent with the medical evidence of record. It is not error for the ALJ to consider the medical evidence in evaluating Plaintiff's self-reported symptoms. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the objective medical evidence

supported the ALJ's credibility assessment of plaintiff's symptom testimony); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (holding that medical evidence is "a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the [ALJ] can consider in his credibility analysis."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Accordingly, the Court finds that the ALJ did not commit legal error on this basis.

### d. Improvement with Treatment

Plaintiff next argues that it was error for the ALJ to consider Plaintiff's improvement with medication. (Doc. 18 at 15). However, it is acceptable for the ALJ to consider the impact of medication on a person's medical condition. *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). Thus, the Court finds no error on this basis.

### e. Interpretation of Medical Records

Next Plaintiff disagrees with the ALJ's interpretation of certain evidence in the medical record. (Doc. 18 at 16). However, it is appropriate for the ALJ to interpret medical testimony including resolving conflicts in the medical record and resolving ambiguities, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); and this Court cannot substitute its interpretation for that of the ALJ, *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Thus, Plaintiff's claim of error on appeal seeking to have this Court re-interpret the medical evidence is rejected.

### f. Missed Appointments

Plaintiff argues that if the ALJ relied on Plaintiff's missed appointments as a basis to not fully credit his symptom testimony, such reliance was error. (Doc. 18 at 16). The Court finds no evidence in the ALJ's opinion that the ALJ relied on the missed

1 | appointments in this way. The ALJ merely noted them as part of the treatment history. (Doc. 15-3 at 20).

### g. Reliance of Medical Records

Next Plaintiff argues it was "nonsensical" for the ALJ to rely on the doctor's treatment notes indicating Plaintiff had a "normal" mental state while Plaintiff was receiving psychiatric treatment. (Doc. 18 at 19). The ALJ correctly summarized the doctors' findings. Thus, Plaintiff is actually taking issue with the doctor's observations and diagnosis. However, this Court cannot use its own judgment to decide that the doctor who contemporaneously evaluated Plaintiff during his treatment was wrong in his observations. *Neros v. Comm. of Soc. Sec.*, No. CV 11-1971-PHX-JAT, 2013 WL 524519, at *4 (D. Ariz. Feb. 11, 2013) ("…this Court cannot substitute its 'opinion' for the opinion of a doctor based on the Court's review of the record.").

On this record, the Court finds that the ALJ correctly summarizing, and then relying on, the medical doctors' reports was not error. As discussed more fully in section III.B. below, the Court does not find error in the ALJ relying on the medical evidence in the record just because it contradicts Plaintiff's self-reported symptoms at the time of the hearing.

### h. "Cherry-Picking"

Finally, Plaintiff argues it was error for the ALJ to "cherry-pick" the evidence to support the agencies' decision. (Doc. 18 at 19-20). After Plaintiff makes this legal argument, Plaintiff offers no facts that Plaintiff claims the ALJ disregarded. Thus, Plaintiff has not shown that the ALJ engaged in "cherry-picking" and the decision will not be reversed on this basis.

### 3. Conclusion Regarding Plaintiff's Symptom Testimony

The Court finds that none of Plaintiff's claimed errors are a basis for reversal in this case. The ALJ gave clear and convincing reasons, supported by substantial evidence of record, to not fully credit Plaintiff's symptom testimony. Additionally, the ALJ did not rely on any improper reasons to discredit Plaintiff's symptom testimony. Accordingly, the

Court will not reverse the decision of the ALJ on this basis.

B.     Physicians' Opinions

1.     Weight Given Reviewing Physicians' Opinions

Plaintiff next argues that the ALJ did not give adequate reasons for giving great weight to the opinions of doctors who reviewed Plaintiff's records. (Doc. 18 at 21). Plaintiff states: "The issue is whether those [reviewing] opinions are sufficient to support an unfavorable decision in the absence of any other medical opinion evidence or articulated basis for favoring those opinions…." (*Id*.).

In this case, there were no treating physicians. Thus, to the extent the social security regulations give greater weight to the opinions of treating physicians, those regulations and the cases interpreting them are inapplicable in this case. Nonetheless, without citation to any law, Plaintiff argues that "…the ALJ provided insufficient rationale to justify relying on the state agency reviewers' opinion to find [Plaintiff] not disabled." (Doc. 18 at 21). Plaintiff repeats this argument in his Reply, again arguing without any citation, "The Commissioner points out that no examining or treating physician provided an opinion of [Plaintiff's] mental work capacities, …, but that is not a legitimate reason to allow state agency reviewer's opinions to determine the outcome of a claimant's case." (Doc. 21 at 10). The Court has located no precedent requiring the ALJ to give "sufficient rational" to explain why he relied on the only medical opinions in the record.

As indicated above, in cases where there are multiple medical opinions, the weight that a particular opinion is given is based on who is providing that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Id.*; *see* 20 C.F.R. 404.1527(c)(1)–(2).

As stated above, in this case, the opinions of the reviewing physicians are the only opinions of record. As *Ghanim* and the C.F.R. indicate, reviewing physicians' opinions are entitled to some weight. Thus, the Court concludes it was not error for the ALJ to rely

on these opinions. Further, it was not error for the ALJ to not give "sufficient rational" for why he gave weight to the only medical opinions of record. The Court finds no legal support for Plaintiff's claim of error on this point. *See Winters v. Barnhart,* No. C 02-5171SI, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.").

### 2. Record Available

Next, Plaintiff argues it was error for the ALJ to give any weight to the opinions of the reviewing physicians because those physicians "failed to base their opinions on a complete record." (Doc. 18 at 22). However, as the Commissioner notes in his response, the law does not require that every record be available to a reviewing physician. (Doc. 20 at 22). "[T]here is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time. At the time they issued their opinions, the non-examining experts had considered all the evidence before them, satisfying the requirements set forth in in 20 C.F.R. § 404.1527(c)(3)." *Owen v. Saul*, 808 Fed.Appx. 421, 423 (9th Cir. 2020); *see also Jennings v. Saul*, 804 Fed.Appx. 458, 462 (9th Cir. 2020) (same); *Garner v. Saul*, 805 Fed.Appx.455, 458 (9th Cir. 2020) (same).

Thus, although the reviewing physicians did not have every medical record, the Court finds it was not error for the ALJ to rely on these opinions in conjunction with all other evidence of record. *See* (Doc. 15-3 at 20 wherein the ALJ summarized all medical evidence, including the evidence Plaintiff states was not available to the reviewing physicians.).

### 3. Additional Opinions

Finally, Plaintiff argues it was error for the ALJ to not order either a psychological medical examiner or a consultative examination. (Doc. 18 at 23). The Commissioner responds and notes that the ALJ may order a consultative examination when there is an inconsistency in the evidence or the evidence of record was inadequate to support a decision. (*Id.* citing 20 C.F.R. § 404.1519a(b)). The Commission summarizes the law as

follows:

> [T]he duty to develop the record arises only if the record is inadequate or ambiguous. *See Ford*, 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d at 459-60, (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence), *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *see also Agadzhanyan v. Astrue*, 357 Fed.Appx. 148, 150 (9th Cir. 2009) (unpublished) (ALJ was not required to order additional psychological testing or evaluation "because he did not find any piece of evidence to be ambiguous or difficult to interpret"), *citing Tonapetyan*, 242 F.3d at 1150.

(Doc. 20 at 22-23).

The Commissioner then argues that the record was fully developed in this case and included the opinions of a psychologist and psychiatrist; the Commissioner resultantly argues that the record was neither ambiguous nor inadequate. (Doc. 20 at 23). Thus, the Commissioner concludes that no additional medical examinations were necessary. (*Id*.). Plaintiff does not address this issue in his Reply.

Plaintiff has failed to point to any particular ambiguous area of the record or any inadequately developed area of the record that would require appointment of a further medical expert. Additionally, the Court finds none. Thus, the ALJ did not err in failing to appoint a further medical expert.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the decision of the ALJ is affirmed and the Clerk of the Court shall enter judgment accordingly.

Dated this 29th day of June, 2021.

James A. Teilborg
Senior United States District Judge